1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    KELLY FICK,                              No. 2:12-cv-01851-MCE-CKD

12                  Plaintiff,

13           v.                                **MEMORANDUM AND ORDER**

14    UNUM LIFE INSURANCE COMPANY
      OF AMERICA, et al.,
15
                    Defendants.
16

17          Plaintiff, Kelly Fick, filed a lawsuit against Unum Life Insurance Company

18    ("Unum") and several corporate and individual insurance brokers (collectively, "Insurance

19    Broker Defendants") in the Superior Court of California, County of Sacramento, asserting

20    the following causes of action: (1) Breach of Contract; (2) Fraud; (3) Negligence;

21    (4) Breach of Implied Covenant of Good Faith and Fair Dealing; and (5) Unfair

22    Competition under Bus. & Prof. Code § 17200.  Defendants removed the case to this

23    Court pursuant to the Court's diversity jurisdiction and federal question jurisdiction.

24    Presently before the Court are Plaintiff's Motion to Remand (ECF No. 15) and

25    Defendants' Motions to Dismiss (ECF Nos. 10, 16.)

26    ///

27    ///

28
                                              1

1  For the reasons that follow, Plaintiff's Motion to Remand is GRANTED. [1]  The case is

2  remanded to the Superior Court of California, County of Sacramento.  Because the Court

3  remands this action to state court, it need not reach the merits of Defendants' Motion to

4  Dismiss.

5

6                                          **BACKGROUND[2]**

7

8          As alleged in the Complaint, Plaintiff was employed by the City of Bakersfield (the

9  "City"), California, as a Deputy City Clerk.  In 1996, the City contacted insurance brokers

10  Cavale-Taylor & Co. Insurance Services, Michael Steven Cavale, SP Administrator LLC,

11  CalFarm Insurance Company,[3] and Shelly Heffner for assistance in obtaining group

12  disability insurance coverage for its employees, including Plaintiff.  The City requested

13  employee-paid long-term disability ("LTD") coverage that would replace the income of

14  employees who became sick and could not continue working after they used up their

15  sick leave and vacation time.  Insurance Broker Defendants placed the insurance

16  coverage requested by the City with Unum.  According to the Complaint, the Unum

17  policy did not provide the coverage that the City requested and did not meet the

18  requirements that the City communicated to Insurance Broker Defendants.  Insurance

19  Broker Defendants allegedly knew that Unum administered insurance claims in such a

20  way as to deny benefits to sick insureds and knew or should have known that Unum's

21  policy included numerous terms that were illegal under California law or were interpreted

22  by Unum narrowly to defeat coverage.

23  _____

24          [1] Because oral argument will not be of material assistance, the Court orders this
    matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

25
           [2] Unless otherwise noted, the facts are taken from Plaintiff's Complaint.  (ECF
26  No. 1 Ex. 1).

27          [3] Defendant CalFarm Insurance Company is presently known as Crestbrook
    Insurance Company ("Crestbrook").  (Cresbrook's Joinder in Notice of Removal
28  ("Crestbrook's Joinder"), ECF No. 1 Ex. 5, at 2.)

1    In 1996, Plaintiff enrolled in the City's LTD insurance program and became
2 covered under the policy with Unum.  In June 2008, Plaintiff began suffering medical
3 problems, including colitis and pancreatitis, and on several occasions had to take
4 extensive periods of time off work.  Plaintiff also suffered from anxiety and depression
5 because of her other health problems.  When Plaintiff's symptoms worsened significantly
6 in February 2009, Plaintiff's physician recommended that Plaintiff should not work until
7 May 2009.  However, because Plaintiff's condition never improved, she has not been
8 able to return to work.  Currently, Plaintiff is totally and permanently disabled.

9    In February or March 2009, Plaintiff applied for benefits under her LTD policy with
10 Unum.  In October 2009, Unum approved Plaintiff's claim and started making insurance
11 payments to her.  However, unbeknownst to Plaintiff, Unum classified Plaintiff's LTD
12 claim as "due to mental illness" which was subject to a 24-month benefit limitation.
13 Plaintiff alleges that Unum failed to inform her of the specific reasons why Unum
14 approved her request for benefits and did not provide Plaintiff with the breakdown of the
15 policy provisions under which the benefits were being paid.  In July 2011, Unum
16 terminated Plaintiff's disability benefits because of the 24-month limitation on coverage in
17 cases of a mental illness and because Unum had determined that Plaintiff could do
18 sedentary work.  As alleged, Unum's denial of insurance coverage was a part of a
19 continuing pattern of Unum's wrongful conduct for which Unum was admonished by the
20 California Department of Insurance in the 2003 Market Conduct Examination of Unum.
21 In particular, the 2003 Market Conduct Examination determined that Unum had been
22 illegally using the "mental illness" benefits limitations to wrongfully deny benefits to
23 insureds, had been using illegal definitions in its policies, including an illegal definition of
24 "total disability," and had been failing to advise insureds of the applicable provisions of
25 their policies.  Despite such determination by the California Department of Insurance,
26 Unum allegedly has not changed its wrongful practices.
27 ///
28 ///

3

1    Plaintiff alleges that, in light of the 2003 Market Conduct Examination, Insurance

2    Broker Defendants knew or should have known about Unum's wrongful practices but still

3    placed the City's LTD coverage with Unum for the 2005-2006 insurance period and each

4    period thereafter.

5    On July 12, 2012, Defendants removed the case to this Court pursuant to the

6    Court's diversity jurisdiction.  (Notice of Removal, ECF No. 1.)  As alleged, Plaintiff is a

7    California citizen.  Four of the five Insurance Broker Defendants are also California

8    citizens.  However, in their Notice of Removal, Defendants contend that the Court should

9    disregard the citizenship of Insurance Broker Defendants for the purposes of

10   establishing diversity because Plaintiff fraudulently joined those Defendants to prevent

11   removal.  (Id. at 4.)  Defendant Crestbrook additionally contends that the case is

12   removable on the basis of this Court's federal question jurisdiction because Plaintiff's

13   state-law claims against Unum are "artfully-pleaded" claims under the Employee

14   Retirement Income Security Act ("ERISA").  (Crestbrook's Joinder, at 3-6.)  On

15   August 10, 2012, Plaintiff filed her Motion to Remand arguing that the removal was

16   improper because she can state viable state law claims against Insurance Broker

17   Defendants.  (Pl.'s Mot. to Remand ("Mot. to Remand"), ECF No. 15, at 5-10.)

18

19                  **STANDARD APPLICABLE TO REMOVAL AND REMAND**

20

21   A defendant may remove any civil action from state court to federal district court if

22   the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).

23   Generally, district courts have original jurisdiction over civil actions in two instances:

24   (1) where a federal question is presented in an action arising under the Constitution,

25   federal law, or treaty; or (2) where there is complete diversity between the parties.

26   28 U.S.C. §§ 1331, 1332.

27   The removing party bears the burden of establishing federal jurisdiction.

28   Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1393 (9th Cir. 1988).

1  The removal statute is strictly construed, and the court resolves any doubt in favor of

2  remand.  <u>Provincial Gov't of Marinduque v. Placer Dome, Inc.</u>, 582 F.3d 1083, 1087

3  (9th Cir. 2009).  In making its determination, the court may look beyond the pleadings,

4  and the removing party is entitled to present facts that prove fraudulent joinder.  <u>Morris v.</u>

5  <u>Princess Cruises, Inc.</u>, 236 F.3d 1061, 1067 (9th Cir. 2001).  If there is any doubt as to

6  the right of removal in the first instance, remand must be granted.  <u>Gaus v. Miles, Inc.</u>,

7  980 F.2d 564, 566 (9th Cir. 1992).

8         The district court first decides whether removal is proper by determining whether

9  a federal question exists on the face of the plaintiff's well-pleaded complaint.  <u>Caterpillar,</u>

10  <u>Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).  When a complaint raises only state causes

11  of action, federal–question jurisdiction "is unavailable unless it appears that some

12  substantial, disputed question of federal law is a necessary element of one of the well-

13  pleaded state claims, or that one or the other claim is 'really' one of federal law."

14  <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 13 (1983).  Therefore,

15  federal-question jurisdiction may nonetheless exist in a complaint that alleges solely

16  state law claims if the complaint necessarily raises a substantial and disputed question

17  of federal law.  <u>Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308,

18  310 (2005).  However, <u>Grable</u> is the rare exception to the general rule that federal-

19  question jurisdiction exists only where there is a federal cause of action.  <u>See</u> <u>Empire</u>

20  <u>Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S. 677, 699 (2006).  The mere

21  presence of a federal issue in a state suit does not, by itself, give rise to federal-question

22  jurisdiction.  <u>Id.</u> at 701.

23         Removal based on the court's diversity jurisdiction is proper when the amount in

24  controversy exceeds $75,000, and where the matter is between the citizens of different

25  states.  28 U.S.C. § 1332(a).  Diversity jurisdiction requires complete diversity of

26  citizenship, with each plaintiff being a citizen of a different state from each defendant.

27  <u>Id.</u>; <u>Caterpillar, Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996).

28  ///

1   However, "one exception to the requirement for complete diversity is where a non-

2   diverse defendant has been 'fraudulently joined.'" Morris, 236 F.3d at 1067.  In this

3   situation, the court may ignore the presence of a sham defendant for the purpose of

4   establishing diversity.  Id.  Fraudulent joinder occurs "'[i]f the plaintiff fails to state a

5   cause of action against a resident defendant, and the failure is obvious according to the

6   settled rules of the state.'" Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203,

7   1206 (9th Cir. 2007) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th

8   Cir. 1987)).  Stated differently, "a non-diverse defendant is deemed a sham defendant if,

9   after all disputed questions of fact and all ambiguities in the controlling state law are

10  resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party

11  whose joinder is questioned." Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166,

12  1169-70 (E.D. Cal. 2011).

13

14                                    **ANALYSIS**

15

16      **A.      Federal Question Jurisdiction**

17

18          Crestbrook argues that Plaintiff's state law claims against Unum should be

19  "re-characterized" as federal claims because the LTD plan at issue is a welfare program

20  governed by ERISA, and thus Plaintiff's claims against Unum for mishandling her claims

21  are completely preempted by ERISA.  (Crestbrook's Joinder, at 2-6.)

22          As a general rule, a plaintiff is" the master of her claim" and "may avoid federal

23  jurisdiction by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. at

24  392.  However, a plaintiff cannot defeat removal of a federal claim by "artfully pleading" it

25  as a state claim. Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998).  "The

26  artful pleading doctrine allows removal where federal law completely preempts a

27  plaintiff's state-law claim."

28  ///

                                        6

1   Id.; see also Caterpillar, Inc. v. Williams, 482 U.S. at 393 ("Once an area of state law has

2   been completely pre-empted, any claim purportedly based on that pre-empted state-law

3   claim is considered, from its inception, a federal claim, and therefore arises under federal

4   law."). "Unlike ordinary preemption, which would only arise as a federal defense to a

5   state-law claim, complete preemption operates to confer original federal subject matter

6   jurisdiction notwithstanding the absence of a federal cause of action on the face of the

7   complaint." In re U.S. Healthcare, Inc., 193 F.3d 151, 160 (3d Cir. 1999).

8       The Supreme Court has identified § 502(a) of ERISA as one of the federal

9   statutes completely preempting state-law claims. See Metro. Life Ins. Co. v. Taylor,

10   481 U.S. 58, 65 (1987). Section 502 of ERISA provides for federal jurisdiction over civil

11   actions to recover benefits due under an ERISA plan, to enforce rights under the terms

12   of the plan, or to clarify rights to future benefits. 29 U.S.C. § 1132(a). The Supreme

13   Court explained that § 502(a) reflected Congress's intent to "so completely pre-empt a

14   particular area that any civil complaint raising this select group of claims is necessarily

15   federal in character." Metro. Life Ins. Co., 481 U.S. at 63-64. If a plaintiff's state-law

16   claims are completely preempted under § 502(a) of ERISA, the complaint "is converted

17   from 'an ordinary state common law complaint into one stating a federal claim for

18   purposes of the well-pleaded complaint rule.'" Marin Gen. Hosp. v. Modesto & Empire

19   Traction Co., 581 F.3d 941, 945 (9th Cir. 2009) (quoting Metro. Life Ins. Co., 481 U.S. at

20   65-66).

21       Defendant Crestbrook asks this Court to "recharacterize" Plaintiff's state-law

22   claims as federal claims because "[t]here is no legal duty independent of ERISA that is

23   implicated by any defendants' actions." (Crestbrook's Joinder, at 5.) However, pursuant

24   to ERISA's explicit statutory language, "governmental plans" are excluded from ERISA's

25   coverage. 29 U.S.C. § 1003(b)(1). The term "governmental plan" includes, inter alia, a

26   plan "established or maintained for its employees by . . . the government of any State or

27   political subdivision thereof." 29 U.S.C. § 1002(32). Crestbrook does not dispute that

28   the City is a political subdivision of the State of California.

1   Instead, Crestbrook argues, relying on Livolsi v. City of New Castle, 501 F. Supp. 1146

2   (W.D. Pa. 1980), that "when a state or local government body chooses a private welfare

3   benefit plan for its employees, it will subject itself to federal jurisdiction under ERISA."

4   (Crestbrook's Joinder, at 5.)  Cresbrook's reliance on Livolsi is misplaced.

5          The insurance plan at issue in Livolsi involved both public and private employers,

6   including several employee organizations that represented some 11,000 private sector

7   employees.  Livolsi, 501 F. Supp. at 1150.  Moreover, many of the private industries

8   participating in that insurance plan "were directly involved in interstate commerce."  Id.

9   Accordingly, the court concluded that the employee organizations involved in the

10  insurance plan were "industries or activities affecting interstate commerce as that phrase

11  is defined in ERISA," and thus the court could exercise jurisdiction over the plan

12  participants under ERISA.  Id.  Unlike the insurance plan at issue in Livolsi, the City's

13  LTD plan does not appear to have any private participants.  According to the Complaint,

14  the City itself negotiated and obtained the group disability insurance plan only for the

15  City's employees.  Crestbrook has not provided any evidence to the contrary.

16         In Silvera v. Mut. Life Ins. Co. of New York, the Ninth Circuit specifically explained

17  that "a municipality's purchase of an insurance plan offered and administered by a

18  private insurer constitute[s] the establishment or maintenance of a governmental plan

19  exempt from ERISA coverage."  884 F.2d 423, 426-427 (9th Cir. 1989).  Thus, contrary

20  to Crestbrook's contention, the fact that the City purchased the LTD plan from a private

21  insurer does not change the governmental nature of the plan.  Accordingly, the disability

22  insurance plan at issue that the City of Bakersfield provided for its employees clearly

23  qualifies as a "governmental plan" and is therefore exempted from ERISA.

24         Because the LTD plan at issue is not covered by ERISA, Plaintiff's state-law

25  claims arising out of the LTD plan are not "completely preempted" by ERISA.

26  Accordingly, the Court does not have federal question jurisdiction over this matter.

27  ///

28  ///

8

1

2

### B.   Diversity Jurisdiction

Defendants argue that Insurance Broker Defendants were fraudulently joined by Plaintiff to prevent removal, and that the Court should disregard those defendants' citizenship for the purposes of determining diversity.  (Notice of Removal, at 4.)

Fraudulent joinder occurs where "'the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" Hamilton Materials, Inc., 494 F.3d at 1206.  Where this occurs, the court may ignore the presence of that defendant for the purpose of establishing diversity. Morris, 236 F.3d at 1067.  However, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" Hunter v. Phillip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009) (citation omitted) (emphasis added).

As a threshold matter, Defendant Unum argues that "Plaintiff's allegations against Insurance Broker Defendants are legally implausible" because they do not meet the "federal pleading standards."  (Unum's Opp. to Motion to Remand ("Unum's Opp."), ECF 22, at 7.)  Unum, relying on Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), contends that Plaintiff cannot state a viable negligence claim because the complaint does not possess "enough heft to nudge the claim across the line from conceivable to plausible."  (Id. at 7-8.)  Unum confuses the federal pleading standard under Federal Rule of Civil Procedure 8, which indeed requires Plaintiff to state a plausible claim for relief, see Twombly, 550 U.S. at 570, with a standard applicable to Plaintiff's motion to remand, which merely requires Plaintiff to demonstrate a "possibility" of a viable claim. See Lieberman v. Meshkin, 1996 WL 732506, at * 3 (N.D. Cal. Dec. 11, 1996) ("Fraudulent joinder is not shown merely because the action is likely to be dismissed against that defendant.  The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so.").

9

1   Thus, as long as "there is a non-fanciful possibility that plaintiff can state a claim under

2   [state] law against the non-diverse defendants[,] the court must remand."  Macey v.

3   Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002).  Remand

4   must be granted unless Insurance Broker Defendants demonstrate that Plaintiff "would

5   not be afforded leave to amend [her] complaint to cure [the] purported deficiency."  See

6   Burris v. AT&T Wireless, Inc., 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006).

7        With these considerations in mind, the Court will analyze whether there is a non-

8   fanciful possibility that Plaintiff can state a claim against Insurance Broker Defendants.

9   The Complaint alleges two causes of action against Insurance Broker Defendants:

10  (1) Negligence (third cause of action), and (2) Unfair Competition in Violation of Bus. &

11  Prof. Code § 17200 (fifth cause of action).  Thus, to avoid remand, Defendants must

12  demonstrate that there is no possibility that Plaintiff can state a negligence claim or an

13  unfair competition claim against any Insurance Broker Defendant.  Defendants have

14  failed to do so.

15       With respect to Plaintiff's negligence claim, Defendants argue that Plaintiff failed

16  to state a viable claim because (1) Plaintiff cannot establish a duty owed to her by

17  Insurance Broker Defendants or that Insurance Broker Defendants breached that duty;

18  (2) even if Insurance Broker Defendants owed a duty under the circumstances of this

19  case, that duty was owed to the City of Bakersfield, and not to Plaintiff; and (3) there is a

20  lack of causation that prevents the claim against Insurance Broker Defendants from

21  going forward.  (Unum's Opp. at 8-10; Crestbrook's Opp. to Motion to Remand

22  ("Crestbrook's Opp."), ECF No. 21, at 8.)

23       Generally, an insurance agent assumes only those duties to its clients that are

24  normally found in any agency relationship.  Jones v. Grewe, 189 Cal. App. 3d 950, 954

25  (1987).  These duties include "the obligation to use reasonable care, diligence, and

26  judgment in procuring the insurance requested by an insured."

27  ///

28  ///

1   Id.; see also James River Ins. Co. v. DCMI, Inc., 2012 WL 2873763, at *6 (N.D. Cal.

2   July 12, 2012) (concluding that, under California law, an insured can state a negligence

3   claim against an insurance broker "for breaching the duty to use reasonable care,

4   diligence, and judgment in procuring insurance requested by the insured").  As a general

5   rule, "an insurance agent does not have a duty to volunteer to an insured that the latter

6   should procure additional or different insurance coverage."  Fitzpatrick v. Hayes, 57 Cal.

7   App. 4th 916, 927 (1997).  However, this general rule changes when "one of the

8   following three things happens: (a) the agent misrepresents the nature, extent or scope

9   of the coverage being offered or provided . . .; (b) there is a request or inquiry by the

10   insured for a particular type or extent of coverage . . .; or (c) the agent assumes an

11   additional duty by either express agreement or by 'holding himself out' as having

12   expertise in a given field of insurance being sought by the insured."  Id.  In these

13   situations, "the agent may be liable to the insured for losses which resulted as a breach

14   of that special duty."  Jones, 189 Cal. App. 3d at 955.

15       Here, Plaintiff alleges that the City retained Insurance Broker Defendants for the

16   purpose of obtaining a specific type of LTD coverage for its employees.  (Compl. ¶¶ 8,

17   40.)  Insurance Broker Defendants allegedly "knew or should have known that Unum

18   administered claims in such a way as to deny benefits to sick insureds and knew or

19   should have known that Unum's policy included numerous terms that were illegal under

20   California law and/or were interpreted by UNUM narrowly to defeat coverage."  (Id. ¶ 8.)

21   Thus, according to the Complaint, Insurance Broker Defendants either misrepresented

22   the extent and scope of insurance coverage offered by Unum, or recommended the

23   coverage that they knew was not the one requested by its client.  Therefore, there is a

24   non-fanciful possibility that, under California law, Insurance Broker Defendants had a

25   duty of reasonable care in procuring the specific type of insurance requested by their

26   client and they breached that duty by placing City's LTD insurance coverage with Unum.

27   ///

28   ///

11

1   Next, Defendants argue that, even if Insurance Broker Defendants owed a duty

2   under the circumstances of this case, that duty was owed to the City of Bakersfield, and

3   not to Plaintiff, because the LTD policy was issued to the City.  (Unum's Opp. at 9-10;

4   Crestbrook's Opp. at 11.)  Defendants' argument is unpersuasive.  Under California law,

5   
6   The determination whether in a specific case the defendant will be held
    liable to a third person not in privity is a matter of policy and involves the
    balancing of various factors, among which are the extent to which the
    transaction was intended to affect the plaintiff, the foreseeability of harm to
7   him, the degree of certainty that the plaintiff suffered injury, the closeness
    of the connection between the defendant's conduct and the injury suffered,
8   the moral blame attached to the defendant's conduct, and the policy of
    preventing future harm.
9   

10   Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958).  In a recent decision, a California

11   appellate court analyzed the applicability of the Biakanja factors in the context of

12   insurance brokers' services and held that an insurance broker could be held liable in

13   negligence to the intended beneficiary of an insurance policy that the broker negligently

14   failed to procure.  See Business to Business Markets, Inc. v. Zurich Specialties

15   ("Business Markets"), 135 Cal. App. 4th 165, 171-72 (2006).

16   In Business Markets, the plaintiff hired an Indian software company, Tricon, to

17   write a custom-made computer program for the plaintiff's business.  Id. at 167.  One of

18   the contract terms obligated Tricon to carry an errors and omissions insurance policy to

19   compensate the plaintiff if Tricon failed to deliver the promised software.  Id.  Although

20   the insurance broker assisting Tricon in obtaining insurance coverage was specifically

21   informed about Tricon's insurance needs, the procured policy excluded coverage for any

22   claims arising from or related to work performed in India.  Id.  When Tricon failed to

23   deliver usable software to the plaintiff, the plaintiff sued Tricon for breach of contract.  Id.

24   at 168.  Based on the insurance policy's exclusion for work done in India, the insurance

25   company refused to indemnify Tricon against the plaintiff's claim.  Id.  Although the

26   plaintiff prevailed in its action for damages against Tricon, the judgment was

27   uncollectible for lack of Tricon's insurance coverage.  Id.  The plaintiff then sued the

28   insurance broker who obtained a deficient insurance policy for Tricon.  Id.

12

1    After conducting a comprehensive analysis of the six <u>Biakanja</u> factors, the court in

2    <u>Business Markets</u> imposed a duty of care on the insurance broker "even though the two

3    parties had no direct contact, were not in privity of contract, and [the non-client] was not

4    named in the policy." <u>Id.</u> at 168-71.  The court emphasized that an insurance broker

5    owes a duty of care not only to its immediate client, but also to an intended third-party

6    beneficiary under the insurance contract.  <u>Id.</u> at 170-71.  To qualify as an intended third-

7    party beneficiary, "the person does not need to be specifically named, as long as he is in

8    the class of members that the insurance is intended to benefit." <u>Id.</u> at 171.  In imposing

9    a duty to a non-client on the insurance broker in <u>Business Markets</u>, the court explained

10   that the insurance contract at issue was intended to affect the plaintiff because "Tricon

11   bought the policy . . . for the purpose of protecting [the plaintiff]," and the injury to the

12   plaintiff from the broker's negligence was foreseeable and sufficiently certain.  <u>Id.</u> at 169.

13   The court also emphasized that the insurance broker voluntarily assumed the

14   responsibility for finding insurance for Tricon" and thus "was obligated to discharge that

15   responsibility competently." <u>Id.</u> at 169-70.

16         Several federal district courts in this circuit also have concluded that, under

17   California law, insurance brokers' duty extends to foreseeable third party beneficiaries of

18   the insurance policy.  <u>See, e.g.</u>, <u>MV Transp., Inc. v. Omne Staff Leasing, Inc.</u>,

19   378 F. Supp. 2d 1200, 1207 (E.D. Cal. 2005) ("An insurance agent that promises to

20   obtain insurance will be liable if it negligently fails to do so. . . .  This liability extends to

21   foreseeable third party beneficiaries of the policy.") (citation omitted); <u>Cayo v. Valor</u>

22   <u>Fighting & Mgmt. LLC</u>, 2008 WL 5170125 (N.D. Cal. Dec. 9, 2008) (concluding that an

23   insurance broker would owe a duty of care to a plaintiff who was injured in a mixed

24   martial arts fight if the plaintiff was an intended beneficiary under the insurance contract

25   between the fight organizers and the insurance brokerage firm that assisted in obtaining

26   insurance coverage for the fight participants).

27   ///

28   ///

1      Here, the City obtained the group insurance policy for the benefit of its

2   employees, including Plaintiff.  Thus, Plaintiff is "in the class of members that the

3   insurance [was] intended to benefit."  See Business Markets, 135 Cal. App. 4th at 171.

4   It was reasonably foreseeable that Insurance Broker Defendants' negligence in choosing

5   an insurance provider for the City would lead to Plaintiff's injury.  Insurance Broker

6   Defendants voluntarily assumed the responsibility of finding a suitable LTD policy that

7   would meet the needs of the City and thus had a duty "to discharge that responsibility

8   competently."  See id. at 169-70.  Therefore, Plaintiff can make a non-frivolous argument

9   that Insurance Broker Defendants owed a duty of care not only to the City, but also to

10  Plaintiff as an intended third-party beneficiary under the City's LTD insurance plan.

11      Finally, Defendant Crestbrook argues that "there is a lack of causation that

12  prevents the claim against the Insurance Broker Defendants from going forward."

13  (Crestbrook's Opp. at 14.)  According to Crestbrook, "Unum's alleged improper conduct

14  would have ceased by the time Plaintiff applied for LTD benefits in 2009," and thus

15  "Plaintiff cannot allege facts showing that Unum's conduct at issue in the 2003 Report

16  was still at issue when she applied for benefits."[4]  (Id. at 14-15.)  Defendants' argument

17  is unpersuasive, particularly given the strong presumption against removal jurisdiction.

18  Whether Unum's wrongful conduct had ceased by the time Plaintiff applied for her LTD

19  benefits in 2009 is a factual dispute that the Court must resolve in Plaintiff's favor.  See

20  Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166, 11969-70 (E.D. Cal. 2011).

21  ///

22

23      [4] To support its contention, Crestbrook asks the Court to take judicial notice of the
    Department of Insurance Market Conduct Division Examination of the Claims Practices
24  of Unum, et al., dated March 28, 2008, and Correspondence from Thomas R. Watjen,
    President and CEO of Unum, to The Honorable Steve Poizner, Insurance
25  Commissioner, dated April 14, 2008.  (Crestbook's RJN at 7.)  Because the Court may
    "look beyond the pleadings" and may consider facts outside the pleadings in determining
26  whether to remand the case to state court, the Court need not take judicial notice of the
    documents provided by Crestbrook for the purpose of Plaintiff's Motion to Remand but
27  may consider them in reaching its decision on Plaintiff's Motion.

28

1  Because there is a possibility that Unum's wrongful conduct was continuing during the

2  relevant time period, Defendants failed to meet their burden of demonstrating that

3  Plaintiff cannot establish the causation element of negligence.

4  Based on the foregoing, there is sufficient authority, both from California state

5  courts and federal district courts, demonstrating that Plaintiff can state a non-frivolous

6  claim for negligence against Insurance Broker Defendants.  Accordingly, the Court finds

7  that Insurance Broker Defendants were not fraudulently joined by Plaintiff and remands

8  this matter to state court.[5]  In light of this ruling, the Court does not reach the merits of

9  Defendants' Motions to Dismiss.

10

11  **CONCLUSION**

12

13  For the reasons set forth above, Plaintiff's Motion to Remand (ECF No. 15) is

14  GRANTED.  The case is remanded to the Superior Court of California, County of

15  Sacramento.  In light of this ruling, the Court need not reach the merits of Defendants'

16  Motions to Dismiss (ECF Nos. 10, 16.)

17  IT IS SO ORDERED.

18

19  Dated:  October 19, 2012

20  _____

21  MORRISON C. ENGLAND, JR
   UNITED STATES DISTRICT JUDGE

22

23

24

25

26  _____

27  [5] Because the Court has concluded that there is a possibility that Plaintiff can state a negligence claim against Insurance Broker Defendants, the Court need not decide whether Plaintiff can state a viable claim under California's Unfair Competition Act.

28